

# State of Tennessee

## PUBLIC CHAPTER NO. 1021

### SENATE BILL NO. 1792

By Massey, Watson, Rose, Yager, Haile, Stevens, Hensley, White

Substituted for: House Bill No. 1614

By Hazlewood, Farmer; Mr. Speaker Sexton; Lamberth, Faison, Sparks, McCalmon, Curtis Johnson, Vaughan, Helton-Haynes, Leatherwood, Gary Hicks, Garrett, Whitson, Todd, Howell, Hawk, Keisling, Cochran, Crawford, Hulsey, Rudd, Marsh, Littleton, Alexander, Lynn, Vital, Davis, Moody, Doggett, Russell, Fritts, Barrett, Sherrell, Wright, Baum, Williams, Zachary, Tim Hicks, Raper, Butler, Burkhart, Hardaway, Slater, Rudder, Bricken, Haston, Boyd, Carringer, Eldridge, Grills, Terry, Hale

AN ACT to amend Tennessee Code Annotated, Title 39, Chapter 17 and Title 47, relative to the Protect Tennessee Minors Act.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1. Tennessee Code Annotated, Title 39, Chapter 17, Part 9, is amended by adding the following as a new section:

(a) This act is known and may be cited as the "Protect Tennessee Minors Act."

(b) As used in this section:

(1) "Active user" means the viewer of a website;

(2) "Age-verified session" refers to the lesser of the session during which the active user's age was verified using a reasonable age-verification method or sixty (60) minutes from the time the active user's age was verified using a reasonable age-verification method;

(3) "Anonymized age-verification data" refers to data sufficient to prove a reasonable age-verification method was used to verify the age of the active user as eighteen (18) or more years of age and dissociated with any personally identifying information. At a minimum, anonymized age-verification data must include architectural diagrams illustrating the technological assets and logical processes by which the reasonable age-verification method is accomplished and data demonstrating a volume of reasonable age-verification method executions consistent with the overall volume of visits to the website;

(4) "Commercial entity" means a corporation, limited liability company, partnership, limited partnership, sole proprietorship, or other legally recognized entity;

(5) "Content harmful to minors" means:

(A)(i) Text, audio, imagery, or video the average person, applying contemporary community standards and taking the material as a whole and with respect to minors of any age, would find sexually explicit and harmful or inappropriate for minors or designed to appeal to or pander to the prurient interest; or

(ii) Text, audio, imagery, or video that exploits, is devoted to, or principally consists of an actual, simulated, or animated display or depiction of any of the following:

(a) Pubic hair, vulva, vagina, penis, testicles, anus, or nipple of a human body;

      (*b*) Pubic hair, vulva, vagina, penis, testicles, anus, or nipple of a fictitious character's body, or the parts of a fictitious character's body analogous or functionally equivalent to the aforementioned parts of the human body;

      (*c*) Touching, caressing, fondling, or other sexual stimulation of human nipples, breasts, buttocks, anuses, or genitals, or the analogous or functionally equivalent parts of a fictitious character's body; or

      (*d*) Sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, excretory functions, exhibitions, or any other sexual act; and

    (B) When taken as a whole, lacks serious literary, artistic, political, or scientific value for minors;

  (6) "Distribute" means to issue, sell, give, provide, deliver, transfer, transmute, circulate, disseminate, or by any other means make available on the internet;

  (7) "Internet" means the global information system that is logically linked together by a globally unique address space based on the Internet Protocol (IP), or its subsequent extension, and is able to support communications using the Transmission Control Protocol/Internet Protocol (TCP/IP) suite, or its subsequent extensions, or other IP-compatible protocols, and that provides, uses, or makes accessible, either publicly or privately, high level services layered on communications and related infrastructure;

  (8) "Minor" means a person under eighteen (18) years of age;

  (9) "News-gathering organization" means any of the following:

    (A) An employee of a newspaper, news publication, or other source of current news of general, public interest, while operating as an employee as provided in this subdivision (b)(9)(A), who can provide documentation of such employment with the newspaper, news publication, or news source; or

    (B) An employee of a radio broadcast station, television broadcast station, cable television operator, or wire service while operating as an employee as provided in this subdivision (b)(9)(B), who can provide documentation of such employment;

  (10) "Publish" means to communicate or make available to another person or entity content on a website;

  (11) "Reasonable age-verification method" includes the following means of establishing the age of the person attempting to view content harmful to minors, implemented in a manner not easily bypassed or circumvented:

    (A) The matching of a photograph of the active user taken between the attempt to view content harmful to minors and the viewing of content harmful to minors, using the device by which the attempt to view content harmful to minors is being made, to the photograph on a valid form of identification issued by a state of the United States of America; or

    (B) A commercially reasonable method relying on public or private transactional data to verify that the age of the person attempting to access the information is at least eighteen (18) years of age or older;

  (12) "Session" refers to the length of time the active user spends on a website as manifested by the session;

  (13) "Substantial portion" means thirty-three and one-third percent (33 1/3%) or more of the total amount of data available on a website;

  (14) "Transactional data":

    (A) Means a sequence of information that documents an exchange, agreement, or transfer between an individual, commercial entity, or third party used for the purpose of satisfying a request or event; and

(B) Includes records from a mortgage, education, or employment entity;

(15) "Website" means content or material accessible to the public via the internet, inclusive of the infrastructure, code, and other technological assets particular to the functioning of the website; and

(16) "Website owner" means an individual or commercial entity that owns, operates, or manages a website.

(c) An individual or commercial entity that publishes or distributes in this state a website that contains a substantial portion of content harmful to minors is liable if the individual or commercial entity does not:

(1) Verify, using a reasonable age-verification method, the age of each active user attempting to access its website; or

(2) Verify, using a reasonable age-verification method, the age of an active user attempting to access its website again after completion of an age-verified session.

(d) A website owner, commercial entity, or third party that executes a required age-verification method shall:

(1) Retain at least seven (7) years of historical anonymized age-verification data; and

(2) Not retain any personally identifying information of the active user after access to the content harmful to minors has been granted.

(e)(1) An individual or commercial entity that is found to have violated subsection (c) is liable to an individual for damages resulting from a minor's accessing the content harmful to minors, including court costs and reasonable attorney fees as ordered by the court.

(2) An individual or commercial entity that is found to have knowingly retained personally identifying information of an active user after access has been granted to the active user is liable to the active user for damages resulting from retention of the identifying information, including court costs and reasonable attorney fees as ordered by the court.

(f) This section does not apply to a bona fide news or public interest broadcast, website video, report, or event and does not affect the rights of any news-gathering organizations.

(g) An internet service provider, or its affiliates or subsidiaries, search engine, or cloud service provider does not violate this section solely for providing access or connection to or from a website or other information or content on the internet or a facility, system, or network not under that provider's control, including transmission, downloading, intermediate storage, or access software, to the extent such provider is not responsible for the creation of the content of the communication that constitutes content harmful to minors.

(h) It is not a violation of this section to distribute, sell, display, or expose material, the distribution, sale, display, or exposure of which is otherwise permitted by law.

(i) A violation of subsection (c) or (d) is a Class C felony.

(j) The attorney general and reporter may bring any appropriate action or proceeding in a court of competent jurisdiction against a commercial entity that fails to comply with this section.

(k) All laws in conflict with this section are repealed to the extent of such conflict.

SECTION 2. If any provision of this act or the application of any provision of this act to any person or circumstance is held invalid, then the invalidity does not affect other provisions or applications of the act that can be given effect without the invalid provision or application, and to that end, the provisions of this act are severable.

SECTION 3. This act takes effect January 1, 2025, the public welfare requiring it, and applies to conduct occurring on or after that date.

SENATE BILL NO. **1792**

**PASSED:** April 24, 2024

*RANDY McNALLY*
*SPEAKER OF THE SENATE*

*CAMERON SEXTON, SPEAKER*
*HOUSE OF REPRESENTATIVES*

APPROVED this 28th day of May 2024

**BILL LEE,** *GOVERNOR*