# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION AT MEMPHIS

| | | |
|---|---|---|
| **FREE SPEECH COALITION, INC.,** | ) | |
| **DEEP CONNECTION TECHNOLOGIES, INC.,** | ) | |
| **JFF PUBLICATIONS, LLC,** | ) | |
| **PHE, INC., and MELROSE MICHAELS,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:24-cv-02933 |
| | ) | **Chief Judge Lipman** |
| **JONATHAN SKRMETTI, in his official capacity as** | ) | **Magistrate Judge Pham** |
| **THE ATTORNEY GENERAL OF TENNESSEE,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S EMERGENCY MOTION
## TO STAY THE PRELIMINARY INJUNCTION PENDING APPEAL

# ARGUMENT

Stays pending appeal turn on four factors: the movant's likelihood of success on appeal, irreparable harm to the movant, harm to others, and the public interest. *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). The last two factors merge here. *SawariMedia, LLC v. Whitmer*, 963 F.3d 595, 596 (6th Cir. 2020). All four factors, moreover, are "not prerequisites that must be met" but must be "balanced together." *Griepentrog*, 945 F.2d at 153. The movant merits a stay if he shows "'serious questions going to the merits.'" *Antonio v. Garland*, 38 F.4th 524, 526 (6th Cir. 2022). These factors warrant a stay.

## I.   The Pornographers' Delay Warrants Denying a Preliminary Injunction.

"[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 585 U.S. 155, 159 (2018) (per curiam). The Sixth Circuit has thus reiterated that an "unreasonable delay in filing for injunctive relief" is reason enough to deny a preliminary injunction. *Huron Mountain Club v. U.S. Army Corps. of Eng'rs*, 545 F. App'x 390, 397 (6th Cir. 2013) (quoting *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*, 511 F. App'x 398, 405 (6th Cir. 2013)). Other courts agree and apply the same rule[1]—including in constitutional cases. *See Hill v. McDonough*, 547 U.S. 573, 584 (2006) (collecting cases "filed too late"); *Perry v. Judd*, 471 F. App'x 219, 224–28 (4th Cir. 2012) (First Amendment claim); *Preston v. Bd. of Trs. of Chicago State Univ.*, 120 F. Supp. 3d 801, 805 (N.D. Ill. 2015) (same).

Those time-honored principles at minimum warrant a stay pending appeal. Free Speech Coalition is a well-resourced, "sophisticated" litigator that has deployed high-powered attorneys to challenge several age-verification laws. *Cummings v. John Morrell & Co.*, 36 F.3d 499, 507

---

[1] *See, e.g.*, *Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1248 (11th Cir. 2016); *Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 968 (2d Cir. 1995); *Memphis A. Philip Randolph Inst. v. Hargett*, 473 F. Supp. 3d 789 (M.D. Tenn. 2020); 11A C. Wright, A. Miller, M. Kane, Federal Practice and Procedure § 2948.1.

1

(6th Cir. 1994). And the PTMA has been on the Pornographers' radar since at least March 2024, when the Coalition submitted a letter opposing the law's passage. *See* Letter from Alison Boden, Exec. Dir., Free Speech Coal., Tenn. General Assembly 1 (Mar. 25, 2024) (attached as Exhibit A).

Still, the Pornographers waited nearly six months before seeking preliminary relief. That lag left only twenty business days—spanning multiple holidays—before the PTMA's effective date. That delay created an entirely avoidable time crunch for the parties and the courts. It also prejudiced the State by forcing it to collect evidence, retain an expert, and prepare its defense on an expedited basis, while necessarily leaving it "a severely limited opportunity" to seek emergency relief from this Court. *Morland v. Sprecher*, 443 U.S. 709, 710 (1979).

Nor is this lengthy delay justified. Counsel's claims that they moved "as quickly as they could" but are just "two guys" that are "understaffed" and bringing suits in "a bunch of different states," Hr'g Tr., R. 34, 801, rings hollow given the legion of lawyers currently representing the Pornographers across the country. The Coalition, through counsel including the ACLU and Quinn Emanuel, has brought lawsuits against age-verification laws in Utah (in May 2023), Louisiana (in June 2023), Texas (in August 2023), Montana (in May 2024), Indiana (in June 2024), and Florida (in December 2024). *Free Speech Coal. v. Paxton*, No. 23-1122 (U.S.) (Quinn Emanuel & the ACLU); *Free Speech Coal., Inc. v. Rokita*, No. 24-2174 (7th Cir.) (Quinn Emanuel).

If anything, other cases reveal that eleventh-hour requests for preliminary relief are the Coalition's modus operandi:

- Texas's age-verification law was enacted May 23, 2023 with a September 1, 2023 effective date. The Coalition waited until August 3 (72 days) to sue and seek preliminary relief.

- Indiana's law was enacted on March 13, 2024 with a July 1, 2024 effective date. The Coalition waited until June 10 (89 days) to sue and seek a preliminary injunction.

- Florida's law was passed March 25, 2024 with a January 1, 2025 effective date. The Coalition waited until December 16 (266 days) to sue and seek a preliminary injunction.

2

Such tactics not only unfairly jam up defendants and strain judicial resources. They also require courts to "assess the merits of important cases earlier and more quickly than is ordinarily preferable." *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 928 (mem.) (2024) (Kavanaugh, J., concurring). This Court should enforce traditional equitable principles and deem the Pornographers' delay sufficient reason to justify a stay of the preliminary injunction.

## II. The Injunction Conflicts with the Supreme Court's and Seventh Circuit's Decisions to Let Similar Laws Take Effect.

Delay aside, the injunction breaks from the Supreme Court and the Seventh Circuit. Both allowed similar age-verification laws (in Texas and Indiana, respectively) to take effect pending appeal. Because those laws are functionally identical to the PTMA, there is no good reason why other States should be permitted to enforce age-verification policies while Tennessee cannot.

In the Supreme Court, the Free Speech Coalition already asserted and lost a motion to enjoin Texas's age-verification law. Like the PTMA, Texas's law requires age verification for websites conveying "sexual material harmful to minors." Tex. Civ. Prac. & Rem. Code Ann. ("Tex. Code") § 129B.002(a). After the Fifth Circuit upheld that provision, *Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 269-79, 287 (5th Cir. 2024), the Supreme Court granted certiorari, 144 S. Ct. 2714 (2024) (mem.). The Coalition then asked the Supreme Court to enjoin Texas's law pending review for largely the reasons it offers now. Stay Appl., No. 23A925 (U.S. Apr. 12, 2024). But the Supreme Court rejected that request and instead allowed Texas's age-verification law to remain in effect pending its merits decision. *Paxton*, 144 S. Ct. 1473 (2024) (mem.).

Later, the Seventh Circuit treated that decision as dispositive of Indiana's right to enforce its age-verification law pending review. As here, Indiana sought a stay of a district court injunction. Reasoning that Indiana's law was "functionally identical" to Texas's, the Seventh Circuit granted the stay because it saw no "adequate reason why Texas's law may be enforced pending

3

the decision on the merits in *Free Speech Coalition v. Paxton*, while Indiana's may not be enforced." *Free Speech Coal., Inc. v. Rokita*, 2024 WL 3861733, at *1 (7th Cir. Aug. 16, 2024).

This Court should follow suit and stay the preliminary injunction. Like in Indiana, Tennessee's age-verification law is "functionally identical" to the Texas law that the Supreme Court allowed to take effect. *Id.* Both require age-verification through a "reasonable" method, apply to websites carrying more than one-third content that is "harmful to minors," and prevent retention of any personal identifying information. *Compare* PTMA §§ 1(b)(13), 1(c)-(e), *with* Tex. Code § 129B.002(a)-(b). Both Tennessee's and Texas's laws cover only content that "taken as a whole, lack[] serious literary, artistic, political or scientific value for minors." PTMA §1(5)(B); Tex. Code § 129B.001(6)(C). Free Speech Coalition is the lead party here as in "both the Indiana case and the Texas cases." *Rokita*, 2024 WL 3861733, at *1. And Tennessee's record includes much of Texas's and Indiana's evidence.

Any differences between the laws' definitions of "harmful to minors" make little, if any, difference in the laws' application—meaning, the definitional distinctions make no legal difference in the context of a *facial* challenge.

In short, there is "no apparent basis to distinguish" the Supreme Court and Seventh Circuit's treatment of Free Speech Coalition's challenge pending appeal from this one. Order at 3, *DeBoer v. Snyder*, No. 14-1341 (6th Cir. Mar. 25, 2014). Rather than split from other courts' treatment of "indistinguishable claims," *Dodd v. U.S. Dep't of Educ.*, 845 F.3d 217, 223 (6th Cir. 2016) (Sutton, J., dissenting), this Court should likewise permit Tennessee to enforce its law pending the Supreme Court's forthcoming disposition of *Paxton*.

4

**III.    The Traditional Factors Warrant A Stay.**

Each of the traditional factors—(1) likelihood of success on appeal; (2) irreparable harm; (3) the balance of hardships; and (4) the public interest—favors a stay too. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

**A.    Tennessee's merits arguments will likely prevail, and at a minimum raise serious questions.**

Tennessee will likely succeed in vacating the injunction on appeal. "Even in the First Amendment context, facial challenges are disfavored" and "hard to win." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723, 744 (2024). This case is not the rare exception. The Pornographers cannot prove *any* unconstitutional applications of the PTMA—much less that "the ratio of unlawful-to-lawful applications" is "lopsided enough to justify the strong medicine of facial invalidation." *United States v. Hansen*, 599 U.S. 762, 784 (2023). At minimum, a stay is warranted because the State presents "serious questions going to the merits.'" *Antonio*, 38 F.4th at 526.

**1.    Overbreadth.**  The Pornographers' choice "to litigate" this case as a facial challenge "comes at a cost." *NetChoice*, 603 U.S. at 723. To succeed on their overbreadth challenge, they must show that the PTMA "prohibits a substantial amount of protected speech relative to its plainly legitimate sweep." *Hansen*, 599 U.S. at 770.

The Pornographers nowhere demonstrated that the PTMA's "unconstitutional applications substantially outweigh its constitutional ones." *NetChoice*, 603 U.S. at 724.[2] They couldn't. The record simply does not contain sufficient information to assess "the full range of [websites] the law[] cover[s]." *Id.* at 724. Indeed, the Pornographers do not even identify most of *the names* of

---

[2] It is far from clear that the PTMA implicates any constitutional interest. In a brick-and-mortar parallel to the PTMA's age-verification requirement, this Court found that purveyors of content harmful to minors had no constitutional interest to assert. *See Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 438-39 (6th Cir. 2024).

5

the websites they represent—let alone describe their full *contents*.  That's a problem because the First Amendment does not protect content that is obscene for adults, meaning States may freely "regulate" obscenity "without infringing on the First Amendment." *Miller v. California*, 413 U.S. 15, 20, 23 (1973).  Even on the incomplete record before the Court, much of the content governed by the PTMA is plainly obscene.  *See* Lusk Decl., R.29-1; Cabrera Decl., R.29-2, 495-98; Glogoza Decl., R.29-3, 575-79.

It's easy to see why the Pornographers prefer to discuss First Amendment principles in the abstract—rather than in real-world view of websites laden with videos glorifying bondage, strangulation, and gang bangs.  But having chosen this strategy, the Pornographers by definition fail to prove a *substantial* number of unconstitutional applications "from the text of the law and from actual fact." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (cleaned up).  The record simply does not allow a court to "measure the constitutional against the unconstitutional applications." *NetChoice*, 603 U.S. at 724.  And that is dispositive here.

**2.    All Applications.**  Even for protected speech, the PTMA poses no First Amendment problem.  The time-place-manner standard—not strict scrutiny—applies.  But whatever the standard, the Act satisfies constitutional review.

For two independent reasons, the Act should be "treat[ed] . . . as content-neutral" and subjected to "less[er] scrutiny." *Big Dipper Ent. v. Warren*, 641 F.3d 715, 717 (6th Cir. 2011).

*First*, the PTMA creates an adult-only zone for sexually explicit content that is scrutinized under rational-basis review rather than strict scrutiny. *Ginsberg*, 390 U.S. at 640.  "*Ginsberg*'s central holding—that regulation of the distribution to minors of speech obscene for minors is subject only to rational-basis review—is good law and binds this court today." *Paxton*, 95 F.4th at

6

270. As the Fifth Circuit held when reviewing the Texas age-verification law, "[t]he proper standard of review is rational-basis, not strict scrutiny." *Id.* at 67.

*Second*, the PTMA principally targets the secondary effects that consuming pornography has on minors. Under the secondary effects doctrine, "the government [can] accord differential treatment to a content-defined subclass of speech [if] that subclass [i]s associated with specific 'secondary effects' of the speech." *Daunt v. Benson*, 956 F.3d 396, 420 (6th Cir. 2020). And, here, by protecting children from obscene content, the Act inherently addresses the harmful secondary effects associated with exposure to such content.

The PTMA satisfies the applicable time-place-manner standard: It furthers a government interest of the utmost importance (protecting the physical and psychological health of children), and it leaves open "alternative avenues of communication" for the speech at issue (any website with age-verification). *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46-47 (1986).

But even if strict scrutiny applies, the Act would be constitutional because it "is narrowly tailored to serve a compelling interest." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015). The Plaintiffs never disputed that Tennessee has a compelling interest in protecting minors from harmful materials on the internet. And Tennessee adopted appropriate means to further that end. The PTMA applies only to "a narrow slice of speech." *Id.* at 452. It does not ban that speech; it merely requires the performances to occur in adult-only zones. The Act thus "tightly fits the State's compelling interest" by "limiting children's exposure," while "still allow[ing] adults to" view the performances. *Crawford v. Lungren*, 96 F.3d 380, 387 (9th Cir. 1996) (holding that a restriction on adult-oriented publications satisfied strict scrutiny).

**B.      The remaining considerations favor a stay.**

Tennessee's interest in "effectuating statutes enacted by representatives of its people" means it "suffers a form of irreparable injury" anytime its laws are "enjoined by a court." *Thompson v.*

7

*DeWine*, 976 F.3d 610, 619 (6th Cir. 2020) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)); *accord L.W. ex rel. Williams v. Skrmetti*, 83 F.4th 460, 491 (6th Cir. 2023), *cert. granted* 144 S. Ct. 2679 (mem.). Tennessee's citizens and communities, too, will be harmed by the documented psychological, behavioral, and public-health problems associated with minors' growing pornography consumption.

Meanwhile, any free-speech harm to the Pornographers from a stay would be "relatively slight" since much of their content is pure obscenity, not protected speech. *Griepentrog*, 945 F.2d at 155. Nor are assertions of non-party adult viewers' harms persuasive. Showing ID is a routine part of daily life, including for constitutional rights like buying a gun, voting, or attending a political rally where alcohol is served. *See, e.g.*, *Indigo Room v. Ft. Myers*, 710 F.3d 1294, 1300 (11th Cir. 2013). There is nothing special about having to show an ID to see sexually explicit content; it's required at every strip club in the State. *See* Tenn. Code Ann. § 7-51-1113(e). And the PTMA does not force adults to "give up their privacy," Dkt. 38 at 850, 862; it *bans* all covered websites from retaining personally identifiable information, PTMA § 1(d)(2); *see Connection Distrib. Co. v. Holder*, 557 F.3d 321, 336 (6th Cir. 2009) (en banc) (no confidentiality concern when information hidden to the public). If a First Amendment right is implicated here, it's a periphery one.

Even spotting some "loss of First Amendment Freedoms," Op. at 877, the public interest favors mitigating further damage to Tennessee youth from pornography, not granting the Pornographers a uniquely unfettered right to distribute minor-harming products without oversight.

**IV.     At Minimum, the Injunction Must Be Narrowed.**

This Court should at least narrow the injunction. Because "a federal court may not issue an equitable remedy 'more burdensome to the defendant than necessary to [redress]' the plaintiff's injuries," *Labrador*, 144 S. Ct. at 923 (Gorsuch, J., concurring) (quoting *Califano v. Yamasaki*, 442

8

U.S. 682, 702 (1979)), the Court should limit its injunction only to those applications of the PTMA that violate *the Plaintiffs'* constitutional rights.  The overbreadth doctrine does not create an end-run around those longstanding remedial principles.  On the contrary, courts use that doctrine to determine the merits of a constitutional challenge—not to craft a remedy for a constitutional injury that a party suffers.  There are many lawful applications of the PTMA that can and should be maintained.  *See Connection*, 557 F.3d at 342 ("A court may enjoin the unconstitutional *applications* of the law while preserving the other valid applications of the law.").

        Respectfully submitted,

        JONATHAN SKRMETTI
        Attorney General and Reporter

        */s/ J. Matthew Rice*
        J. MATTHEW RICE (BPR #040032)
        Solicitor General of Tennessee
        Office of Tennessee Attorney General
        P.O. Box 20207
        Nashville, Tennessee 37202
        (615) 532-6026
        Matt.Rice@ag.tn.gov

        *Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the Court's electronic filing system on December 31, 2024 to all counsel of record:

D. Gill Sperlein
THE LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, CA 94102
gill@sperleinlaw.com

Jeffery Sandman
WEBB DANIEL FRIEDLANDER LLP
5208 Magazine St.
Suite #364
New Orleans, LA 70115
Jeff.Sandman@webbdaniel.law

Gary E. Veazey
JOHNSON GRUSIN KEE & SURPRISE
780 Ridge Lake Boulevard, Ste. 202
Memphis, TN 38119
gveazey@jglawfirm.com

James M. Allen
ALLEN LAW FIRM PLLC
780 Ridge Lake Boulevard, Ste. 202
Memphis, TN 38120-9426
jim@jmallenlaw.com

Edward M. Bearman
780 Ridge Lake Boulevard, Ste. 202
Memphis, TN 38120
ebearman@jglawfirm.com

>*/s/ J. Matthew Rice*
>J. MATTHEW RICE (BPR #040032)
>Solicitor General of Tennessee
>Office of Tennessee Attorney General
>P.O. Box 20207
>Nashville, Tennessee 37202
>(615) 532-6026
>Matt.Rice@ag.tn.gov
>
>*Counsel for Defendant*