IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| FREE SPEECH COALITION, INC, et al., )<br>    Plaintiffs, )<br> )<br>v. )<br> )<br>JONATHAN SKRMETTI, in his official )<br>capacity as THE ATTORNEY GENERAL )<br>OF TENNESSEE, )<br> )<br>    Defendant. ) | No. 2:24-cv-02933-SHL-tmp |

**ORDER DENYING DEFENDANT'S EMERGENCY MOTION TO STAY THE
PRELIMINARY INJUNCTION PENDING APPEAL**

On December 30, 2024, the Court granted Plaintiffs' motion to preliminarily enjoin the Attorney General of Tennessee from enforcing the Protect Tennessee Minors Act (ECF No. 38), and the Attorney General immediately filed his notice of appeal (ECF No 39). The next morning, the Attorney General filed an emergency motion to stay the preliminary injunction until the Sixth Circuit decides his appeal. (ECF No. 40.) Plaintiffs filed a response in opposition. (ECF No. 42.) The Court has already rejected most of the arguments raised in the motion to stay. Because there has been no intervening change in precedent in the past twenty-four hours, the Attorney General's motion is **DENIED**.

## LEGAL STANDARD

A court considering whether to stay a preliminary injunction must consider the same four factors it used to grant the injunction. Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir. 1991). These factors include (1) the likelihood of the moving party's success on the merits, (2) the likelihood the moving party will be irreparably harmed absent a stay, (3) whether the public will suffer harm if the court grants the stay, and (4) the public interest in granting the stay. Id. Each factor should be balanced against each other.

Id. But the first two factors "are the most critical." Antonio v. Garland, 38 F.4th 524, 526 (6th Cir. 2022). The moving party must show more than a possibility of success on the merits—he is "required to show, at minimum, 'serious questions going to the merits.'" Id. (quoting Mich. Coal., 945 F.2d at 153–54). The Attorney General has not done so.

## ANALYSIS

I.     **UNREASONABLE DELAY**

Before the Attorney General addresses the merits, he asks this Court to stay its injunction because Plaintiffs unreasonably delayed in filing their request for injunctive relief.[1] (ECF No. 41 at PageID 888.) He points out that Plaintiffs were aware of the PTMA as early as March 2024, when Plaintiff Free Speech Coalition, Inc. sent a letter to the Tennessee legislature opposing the law's passage. (ECF No. 41 at PageID 888–89.) Even if Plaintiffs knew about the PTMA in March, it was not passed until April 24, and it did not become a law until May 28. (ECF No. 27-1 at PageID 392.)

Plaintiffs filed their motion for a preliminary injunction in November, six months after Tennessee enacted the PTMA and over a month before it went into effect. (See ECF No. 1.) The Court is sympathetic to the hardship the Attorney General faced in collecting evidence, retaining an expert, and preparing its defense on an expedited basis, especially over the holidays. But challenging a state law is difficult in many respects. It is it hard to find individuals willing to come forward to challenge a law like the PTMA, especially at the risk of being reduced to "Pornographers,"[2] as the Attorney General does here. Despite the six-month timeline, the

---

[1] At the same time the Attorney General argues that Plaintiffs filed their motion too late, he argues that they filed it too early. (ECF No. 27 at PageID 368 (asserting that Plaintiffs lack standing because there is no certainly impending threat of enforcement).)

[2] For the first time throughout this litigation, the Attorney General refers to Plaintiffs as "Pornographers." (See, e.g., ECF No. 40 at PageID 883.) To the extent that this is a tactical

Attorney General has produced no evidence to show that Plaintiffs unreasonably sat on their rights. See Benisek v. Lamone, 585 U.S. 155, 159 (2018) (finding an unreasonable delay where the plaintiff waited six years from the date of injury to request a preliminary injunction and three years from the date they filed their complaint); Huron Mountain Club. v. U.S. Army Corps of Engineers, 545 F. App'x. 390, 397 (6th Cir. 2013) (finding an unreasonable delay where the plaintiff waited six years to challenge state action); Allied Erecting and Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc., 511 F. App'x. 398, 405 (6th Cir. 2013) (finding an unreasonable delay where the plaintiff did not request injunctive relief until after the jury rendered a verdict against him).

The Attorney General asserts that Free Speech Coalition's modus operandi is to delay filing suit until the last minute. (ECF No. 41 at PageID 889.) But none of the other courts addressing age verification requirements have refused to grant an injunction because of a delay—indeed, none of them perceived a delay at all. See Free Speech Coal., Inc. v. Colmenero, 689 F. Supp. 3d 373, 385 (W.D. Tex. 2023), aff'd in part, vacated in part on different grounds sub nom Free Speech Coal., Inc. v. Paxton, 95 F.4th 263 (5th Cir. 2024), cert. granted, 144 S. Ct. 2714 (2024); Free Speech Coal., Inc. v. Rokita, No. 1:24-cv-00980-RLY-MG, 2024 WL 3228197 (S.D. Ind. June 28, 2024). The appellate courts that either reversed or stayed those injunctions did not do so because of delay either. See Paxton, 95 F.4th at 274 (reversing the district court's grant of an injunction after applying rational basis review despite binding precedent to the contrary); Free Speech Coal., Inc. v. Rokita, No. 24-2174, 2024 WL 3861733, at *1 (7th Cir. Aug. 16, 2024) (staying the district court's grant of an injunction pending the

---

choice, it is not well-taken, and it misses the point—the PTMA suppresses more than just pornography.

3

Supreme Court's review of the Texas law because the two laws are materially identical). This Court likewise does not perceive any delay here.

## II.     OTHER AGE VERIFICATION LAWS IN EFFECT

The AG also argues that this Court should stay its injunction because age verification laws in other states remain in effect pending appeal. (ECF No. 41 at PageID 890.) The Supreme Court summarily declined to re-enjoin Texas's law pending review of the Fifth Circuit's decision reversing the district court's grant of a preliminary injunction. (Id.) And the Seventh Circuit followed suit in a one-page opinion that did not address the merits of the parties' claims. Rokita, 2024 WL 3861733, at *1 ("Functionally identical statutes should be treated the same while the Supreme Court considers the matter.")

Indiana's law and Texas's law are "functionally identical." Id. They both incorporate an obscenity-for-minors standard. See Ind. Code § 24-4-23-3 (incorporating Ind. Code § 35-49-2-2), Tex. Civ. Prac. & Rem. Code Ann. § 129B.001(6). The Seventh Circuit has discretion to treat the Supreme Court's refusal to re-enjoin the Texas law as dispositive. But this Court does not. The PTMA is not functionally identical to either Texas's law or Indiana's law because it captures more than just obscenity for minors. Under the PTMA, content does not even have to be harmful to minors to fall under the definition of "content harmful to minors." (ECF No. 38 at PageID 869 ("In essence, "text" that "principally consists of" the words "pubic hair, vulva, vagina, penis, testicles, anus, or nipple" does not even have to be "harmful" for minors to fall under the definition of "content harmful to minors.").)

The Attorney General argues that Tennessee's law and Texas's law both only cover content that "taken as a whole, lack[] serious literary, artistic, political or scientific value for minors." (ECF No. 41 at PageID 891.) But that is only true of Tennessee's law. To fall under

4

Texas's law, the content must include "sexual material" that is "designed to appeal to or pander to the prurient interest" of minors "in a manner that is patently offensive with respect to minors" and lacks serious value. The Attorney General asserts that these differences have little effect in the PTMA's application, but these definitional differences are in reality critical to the overbreadth of the PTMA's application.

The PTMA's use of disjunctives and its omission of key language allows it to capture more protected adult speech and even speech that has traditionally been protected for minors. In every application, it will always capture more speech. Because of these material differences, the Court finds the laws distinguishable and declines to join the Seventh Circuit in waiting for the Supreme Court to rule on the appeal from the Fifth Circuit—even if the Supreme Court affirmed the Fifth Circuit, that ruling would have little impact here.

### III. STAY FACTORS

The traditional factors for staying an injunction weigh against the Attorney General. He raises no new arguments on the merits of his defense, and the law has not changed since yesterday evening.

#### A. Overbreadth

The Attorney General argues that Plaintiffs cannot demonstrate success on their facial challenge. The first step in a facial analysis is to assess the scope of the state law. Moody v. NetChoice, LLC, 603 U.S. 707, 724 (2024). The court should question "what activities, by what actors," does the law prohibit or otherwise regulate. Id. Here, those questions are easy. The PTMA regulates content on the internet. It requires any website to verify the age of its users if one-third of its content is deemed harmful to minors. PTMA § (c). The PTMA's scope is clear.

The next step is to decide which of the law's "applications violate the First Amendment, and to measure them against the rest." Moody, 603 U.S. at 725. This question is easy, too. Every time the PTMA forces a website that publishes protected adult speech to verify the age of a user, the PTMA's application will be unconstitutional, even if the website has content that is harmful to minors. Materials that are obscene for minors are not automatically obscene for adults. Just because speech is sexual does not make it obscene. Reno v. ACLU, 521 U.S. 844, 874 (1997) (quoting Sable Comms. of Cal., Inc. v. FCC, 492 U.S. 115, 126 (1989)) ("[S]exual expression that is indecent but not obscene is protected by the First Amendment."). And the PTMA captures more protected speech than it does unprotected speech by its own terms. Websites that are mostly comprised of content that is not harmful to minors must pay to verify the ages of their visitors. The Attorney General's argument that there is no proof that the unconstitutional content outweighs the constitutional content ignores this reality.

Moreover, any burden on an adult's protected speech draws strict scrutiny—and the PTMA will fail strict scrutiny every time. (See ECF No. 38 at 872–77.) The record is sufficiently developed to decide that every time the PTMA restricts protected adult speech, it is unconstitutional. The one time the PTMA would be constitutional is when it is applied to a website comprised entirely of content that is obscene for adults. That is certainly not true of Plaintiff Deep Connection Technologies, Inc.'s website O.School, which provides sex education and publishes articles about consent in long term relationships, and that is not even true of the pornography websites that Tennessee claims it is targeting.[3] (See id. at PageID 848.) There is only one constitutional application of the PTMA. Comparatively, the unconstitutional

---

[3] Even Pornhub runs a blog on the website "where it discusses the latest developments in the adult-entertainment industry including arguments for what regulations legislatures should pass to address minors viewing obscene content." Rokita, 2024 WL 3228197 at *2.

6

applications are substantial. On the record before the Court, Plaintiffs will likely be successful in their facial challenge. See Free Speech Coal., Inc. v. Rokita, No. 1:24-cv-00980-RLY-MG, 2024 WL 5055864, at *2-6 (S.D. Ind. July 25, 2024) (substantively addressing the plaintiffs' facial challenge to a similar, less restrictive age verification requirement and finding that the unconstitutional applications outweighed the constitutional ones).

B.     Level of Review

The Attorney General again argues that rational basis review applies to the PTMA because it regulates content that is harmful to minors, even though it also burdens protected adult speech. This Court has already rejected that argument. (ECF No. 38 at PageID 861–71.) The Supreme Court has too. See Sable, 492 U.S. at 126 (applying strict scrutiny to a law regulating "sexual expression which is indecent but not obscene" because that expression "is protected by the First Amendment"); Reno, 521 U.S. at 874 (applying strict scrutiny to a law denying minors access to "harmful" internet content because it "effectively suppresses a large amount of adult speech that adults have a constitutional right to receive and to address to one another"); United States v. Playboy Ent. Grp., Inc., 529 U.S. 803, 811–13 (2000) (applying strict scrutiny to a law regulating "indecent" and "sexually explicit adult programming" because it is a "content-based speech restriction" on "protected speech"); Ashcroft v. ACLU, 542 U.S. 656, 664–670 (2004) (applying strict scrutiny to a law regulating internet content that is harmful to minors because it is a content-based restriction on protected adult speech).

Both this Court and the Supreme Court have also rejected the Attorney General's argument that intermediate scrutiny applies. The PTMA seeks to protect children from the physical and psychological effects of encountering harmful content on the internet—that is a primary effect, not a secondary one. See Reno, 521 U.S. at 874 (holding that the secondary

7

effects doctrine did not apply where the Communications Decency Act restricted indecent speech on the internet to prevent children from seeing it).  If the secondary effects doctrine applied in this context, it would apply in every context.

Finally, the Attorney General has not persuaded the Court that the PTMA survives strict scrutiny.  He has not addressed the tailoring of the statute, nor the less restrictive means available to accomplish the same goal.  Blocking and filtering technology remains a better method of protecting children.  Unlike the PTMA, it would limit children's exposure without burdening protected adult speech.  (ECF No. 38 at PageID 875–77.)

### C. Balance of Harms

The Attorney General's argument that Tennessee citizens will be irreparably harmed absent a stay on the injunction is also unpersuasive.  Tennessee citizens have been able to access any website without restriction for decades.  Continuing to do so while the Attorney General's appeal makes it way to the Sixth Circuit will pose no additional harm, especially when parents can restrict access themselves.

## CONCLUSION

The breadth of the injunction is appropriate given the breadth of the unconstitutional applications at issue.  For the foregoing reasons, the Attorney General's motion is **DENIED**.

**IT IS SO ORDERED,** this 31st day of December, 2024.

s/ Sheryl H. Lipman  
SHERYL H. LIPMAN  
CHIEF UNITED STATES DISTRICT JUDGE