# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE

|  |  |
|---|---|
| FREE SPEECH COALITION, INC.; DEEP CONNECTION TECHNOLOGIES, INC.; JFF PUBLICATIONS, LLC; PHE, INC.; and MELROSE MICHAELS, <br><br>     Plaintiffs, <br><br>  v. <br><br> JONATHAN SKRMETTI, in his official capacity as THE ATTORNEY GENERAL OF TENNESSEE, <br><br>     Defendant. | Civil Action No. 2:24-cv-02933 <br><br> Judge Sheryl H. Lipman |

## PLAINTIFFS' STATUS REPORT AND RESPONSE TO ORDER TO SHOW CAUSE

### INTRODUCTION

Although *Paxton* does harm to Plaintiffs' First Amendment claim, it is no death knell in this litigation. The Supreme Court granted certiorari in that case "to decide whether the[] burdens [on adult visitors to Plaintiffs' sites] likely render H.B. 1181 unconstitutional under the Free Speech Clause of the First Amendment." *Paxton*, Slip Op. at 1. The core holding is narrowly aimed at resolving that question only—establishing the standard of review in First Amendment challenges to H.B 1181 and substantially similar laws:

> Adults have the right to access speech that is obscene only to minors. And, submitting to age verification is a burden on the exercise of that right. But, adults have no First Amendment right to avoid age verification, and [Texas H.B. 1181] can readily be understood as an effort to restrict minors' access. Any burden experienced by adults is therefore only incidental to the statute's regulation of activity

> that is not protected by the First Amendment. That fact makes intermediate scrutiny the appropriate standard under our precedents.

*Paxton*, Slip Op. at 18.

In *this* case, Plaintiffs' First Amendment claim presents a challenge to a uniquely problematic statute on different First Amendment theories, and Plaintiffs' claims sounding in the Due Process Clause and Section 230 preemption emerge from *Paxton* totally unscathed. Certainly, *Paxton* changes aspects of this litigation, and, admittedly, the viability of the preliminary injunction. But the reasoning in Paxton does not "end this case," and the AG's suggesting otherwise reveals a misunderstanding of the extent to which Tennessee's PTMA varies from Texas' H.B. 1181 and attempts to suggest to the Court a flagrant overread of this new precedent.

Concurrently with this filing, Plaintiffs file a notice withdrawing their Motion for Preliminary Injunction. Plaintiffs will file an amended complaint to conform to Tennessee's changes to the PTMA and the Supreme Court's decision in *Paxton*.

## RESPONSE TO ORDER TO SHOW CAUSE

Attorneys representing Plaintiffs in this matter represent similar plaintiffs challenging similar statutes in Louisiana, Florida, Indiana, Montana, Texas, the Fifth Circuit, the Sixth Circuit, the Seventh Circuit, and the Supreme Court. All the district and circuit courts had stays in place pending the Supreme Court's decision in *Paxton*. In this matter, Plaintiffs erroneously conflated the Sixth Circuit's order holding briefing on Defendant's appeal in abeyance, which specifically required only Defendant to file status reports, with this Court's requirement that the parties file a status report after the *Paxton* ruling. Plaintiffs' delay in filing this Status Report was brief, was not made in bad faith, and has not prejudiced Defendant. Decisions to extend deadlines or accept late filings are comfortably within the district court's "broad discretion to manage its docket." *ACLU of Kentucky v. McCreary Cty., Ky.*, 607 F.3d 439, 451 (6th Cir. 2010);

*Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006). Plaintiffs apologize for the misunderstanding and respectfully request the Court excuse Plaintiffs' late filing.

## STATUS REPORT

**A. Plaintiffs' First Amendment Claim Survives *Paxton***

1. *The PTMA is materially different than H.B. 1181*

After this Court granted Plaintiffs' motion for preliminary injunction, Tennessee amended its Protect Tennessee Minors Act (PTMA) in an attempt to align its harmful to minors definition with the *Miller/Ginsberg* obscenity standard. Now, content "harmful to minors" refers to

> that quality of any <u>description</u> or representation, in whatever form, of nudity, sexual excitement, sexual conduct, <u>excess violence</u> or sadomasochistic abuse when the matter or performance (A) Would be found by the average person applying contemporary community standards to appeal predominantly to the prurient, <u>shameful or morbid</u> interests of minors; (B) Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors; and (C) Taken as whole lacks serious literary, artistic, political or scientific values for minors.

Tenn. Code Ann. § 39-17-901(6) (underlining added)

As the text emphasized above reveals, a website operator now may be in violation of the amended PTMA without its contents being even remotely sexual. Anything depicting "excess violence" which appeals predominantly to a minor's "shameful or morbid interests" runs afoul of the statutory standard as long as it lacks serious value. This ostensibly would include websites hosting violent films or violent videogame streams, or even a blog hosting written *descriptions* of those videos. Moreover, the amended PTMA does not specifically define the offending content at all.

Both features—the inclusion of nonsexual violence and the omission of specifically defined contents—present First Amendment problems the Supreme Court did not address or resolve in *Paxton*.

With respect to the first—it has long been black letter law that the modified-for-minors obscenity standard established in *Miller* and *Ginsberg* applies only to material that is sexual and prurient in nature; violence, whether gratuitous or otherwise, simply is not "obscene" for adults *or* for minors. *See Brown v. Entertainment Merchants Assn.,* 564 U.S. 786 (2011) (recognizing that the "obscenity exception to the First Amendment does not cover whatever a legislature finds shocking, but only depictions of 'sexual conduct'"; "speech about violence is not obscene," and a "legislature cannot create new categories of unprotected speech"). *Paxton* did not change this standard. *See Paxton*, Slip Op. at 9 ("When regulating minors' access to sexual content . . . a State may prevent minors from accessing works that (a) taken as a whole, and under contemporary community standards, appeal to the prurient interest *of minors*; (b) depict or describe <u>specifically defined</u> <u>sexual conduct</u> in a way that is patently offensive *for minors*; and (c) taken as a whole, lack serious literary, artistic, political, or scientific value *for minors*.") (underlining added); *Id.* at 10 n.3 ("H. B. 1181 covers only depictions of activity that would qualify as "sexual conduct" in an adult obscenity statute. We therefore need not decide whether a statute addressing obscenity to minors can define a broader range of activity as 'sexual conduct' than an adult obscenity statute." (internal citation omitted).

So, too, does Tennessee's failure to *specifically define* the proscribed contents render the PTMA constitutionally suspect. Every other state to have enacted an age verification law has gotten this part correct—spelling out the specific sexual acts and organs that meet the state's definition. This is, in fact, a fundamental feature of due process, and one that the Supreme Court

reiterated in *Paxton. See Paxton*, Slip Op. at 9 ("When regulating minors' access to sexual content . . . a State may prevent minors from accessing works that (a) taken as a whole, and under contemporary community standards, appeal to the prurient interest *of minors*; (b) depict or describe <u>specifically defined</u> <u>sexual conduct</u> in a way that is patently offensive *for minors*; and (c) taken as a whole, lack serious literary, artistic, political, or scientific value *for minors*.") (underlining added). Tennessee's failure to abide such a long-venerated standard, *even after amendment*, is somewhat remarkable.

Finally, the PTMA includes a curious provision, absent from Texas's H.B. 1181, that requires affected websites to reverify their users *every sixty minutes*. Amidst the recent proliferation of age-verification laws, Tennessee is—again—the *only* state to have adopted this provision. The *Paxton* Court cautioned that the applicable intermediate scrutiny is deferential but not "toothless," citing the State's concession at oral argument that "it could not require as proof of age an 'affidavit' from the individual's 'biological parent'"—or just "the sort of manipulation of a legitimate kind of regulation that intermediate scrutiny can weed out but that rational-basis review cannot." *Paxton*, Slip Op. at 31. But Tennessee's reverification requirement begs the question whether the legislature had some pernicious motive beyond protecting minors from harmful content online and aimed at stifling *adult* speech, too. There might be no such evidence, but this is a question for another day and with the benefit of discovery and thorough examination of the legislative record.

2. Paxton *involves adult-industry litigants, a facial challenge, and a preliminary record*

The *Paxton* Plaintiffs were the Free Speech Coalition and numerous operators of adult websites whose core offerings were understood to meet the statutory definition of "material harmful to minors." Regardless of how Texas requires websites to calculate its 33 1/3%

threshold, it was accepted as a given that the *Paxton* Plaintiffs' websites would meet that threshold. Put otherwise, there was no chill imposed on *them*, and their challenge was thus fashioned as a *facial* attack on H.B. 1181. *See Paxton*, Slip Op. at 4 (noting that Petitioner-Plaintiffs "sought to enjoin enforcement of the statute as facially unconstitutional under the Free Speech Clause of the First Amendment").

But *this* case is different. Plaintiffs include online purveyors of non-pornographic content, some percentage of which might nevertheless fit Tennessee's definition of "material harmful to minors." Plaintiffs thus brought both facial *and* as-applied challenges, requiring an analysis that the Supreme Court did not have occasion to conduct in *Paxton*.

Just as importantly, the Supreme Court in *Paxton* decided the standard of review on a preliminary record and, pursuant to that posture, held only that Plaintiffs had not demonstrated a substantial likelihood of success on the merits under intermediate scrutiny. But a final application of that standard awaits in the Texas district court (even if one may faintly see the writing on the wall).

### B.  Plaintiffs' *Other* Claims Survive *Paxton*, Too

Reading the AG's brief, one could be excused for forgetting that Plaintiffs raised other claims—sounding in the Due Process Clause and preemptive effect of Section 230—that were not subject of the appeal in *Paxton* and not addressed in that opinion. The Supreme Court did nothing to suggest, one way or another, how these additional claims would fare. That answer requires discovery and a trial on the merits.

Courts do not and cannot "bless" the constitutionality of a statute.[1] They are limited to addressing specific legal challenges raised in discrete cases and controversies, and they must take those cases in the posture that they arrive. *Cf. United States v. Raines*, 362 U.S. 17 (1960) ("This Court, as is the case with all federal courts, has no jurisdiction to pronounce any statute, either of a state or of the United States, void, because irreconcilable with the constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies."). And to suggest that the Supreme Court's cursory reference, in a footnote, to other "materially similar" age-verification laws like the PTMA "ends this case" is to test the bounds of *this* Court's credulity. *See* TN Status Rep. at 3.

## CONCLUSION

Plaintiffs have viable claims challenging provisions of the PTMA that survive Tennessee's changes to the PTMA and the Supreme Court's ruling *Paxton*. The Court should vacate its order granting Plaintiffs' motion for preliminary injunction as moot and the parties should work with the Court to develop a schedule for proceeding with this litigation.

Respectfully Submitted,

Date: July 22, 2025

*/s/ D Gill Sperlein*
D. Gill Sperlein (pro hac vice)
The Law Office of D. Gill Sperlein

Edward M. Bearman (Bar No. 14242)
The Law Office of Edward M. Bearman

Jeffrey Sandman (pro hac vice)
Sandman Law LLC

Attorneys for Plaintiffs

---

[1] Even the same law can be challenged numerous times on different grounds; the Affordable Care Act, for example, faced over 2000 legal challenges, with three of them making their way to the Supreme Court.

-7-

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the Court's electronic filing system on July 22, 2025 to all counsel of record.

*/s/ D Gill Sperlein*
D Gill Sperlein