IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| FREE SPEECH COALITION, INC.; ) <br> DEEP CONNECTION TECHNOLOGIES, ) <br> INC.; JFF PUBLICATIONS, LLS; PHE, ) <br> INC.; AND MELROSE MICHAELS, ) <br> ) <br> *Plaintiffs*, ) <br> ) <br> v. ) <br> ) <br> JONATHAN SKRMETTI, in his official ) <br> capacity as THE ATTORNEY GENERAL ) <br> OF TENNESSEE, ) <br> ) <br> *Defendant*. ) | Civil Action No. 2:24-cv-02933 <br> Chief Judge Lipman <br> Magistrate Judge Pham |

**REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendant has explained why Plaintiffs' Amended Complaint should be dismissed—for lack of standing or for failure to state a claim. Plaintiffs have responded to Defendant's motion, but none of their arguments has merit. Defendant specifically replies to a few of their arguments as follows.

**I.      Plaintiffs Lack Standing.**

In support of their position that they have standing to sue, Plaintiffs contend, *inter alia*, that they *have* alleged an intention to "engage in a course of conduct arguably affected with a constitutional interest" (Def.'s Mem., Dkt. 72, PageID# 1097-98 (citing *Friends of George's, Inc. v. Mulroy*, 108 F4th 431, 435 (6th Cir. 2024)), because their claims "are focused on minors' rights to view content that is *not* obscene as to them" and on adults' rights to view any content. Resp., Dkt. 73, PageID# 1117 (emphasis in original). But the PTMA applies only to "[a]n individual or commercial entity that publishes or distributes" a website that contains a substantial portion that

1

is harmful to minors. Tenn. Code Ann. § 39-17-912(c). In other words, the text of the PTMA does not require *viewers* to do anything, and it does not reach content that is not obscene for minors. *See* Tenn. Code Ann. § 39-17-912(c)-(d).

Plaintiffs do not represent Tennessee's children, or Tennessee's adults. Plaintiffs are not simply viewers—they are publishers or distributors, as they must be before their website content triggers the PTMA. As Defendant has discussed, the PTMA regulates a narrow slice of speech—websites with a substantial portion of content that *is obscene* for minors but that *is not obscene* for adults. Def.'s Mem., Dkt. 72, PageID# 1098. The PTMA does not even ban these websites; it merely requires age verification. Tenn. Code Ann. § 39-17-912(c). Plaintiffs have no constitutional interest in publishing or distributing this narrow slice of speech to minors. *See Friends of George's, Inc.*, 108 F.4th at 438-39.[1] And "adults have no right to avoid age verification." *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 483 (2025). Plaintiffs have therefore not alleged an intention to engage in constitutionally protected speech.

Plaintiffs also contend that they have standing to sue—and that sovereign immunity does not bar their claims—because the Defendant, Tennessee's Attorney General, *can* criminally prosecute under the PTMA. Resp., Dkt. 73, PageID## 1116-17, 1119-20. But "the Tennessee Attorney General does not have the power to initiate criminal prosecutions." *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1032 (6th Cir. 2022); *see also Pirtle v. State*, No. W2008-01934-CCA-R3-HC, 2009 WL 181925, at *3 (Tenn. Crim. App. June 25, 2009) ("[T]he Attorney General and Reporter has no authority to prosecute violations of state criminal statutes in the Circuit Courts of Tennessee."). And the PTMA does not grant the Attorney General

---

[1] The Sixth Circuit's alternative holding that plaintiffs lacked a constitutional interest giving rise to pre-enforcement standing in *Friends of George's* is not dicta. *See Freed v. Thomas*, 976 F.3d 729, 738 (6th Cir. 2020) ("[A]lternative holdings are not dicta.")

new authority to criminally prosecute its violators. The statute provides only that the Attorney General "may bring any appropriate action or proceeding in a court of competent jurisdiction," Tenn. Code Ann. § 39-17-912(j)—a reference to *civil* actions or proceedings. District Attorneys General possess the "sole duty, authority, and discretion to prosecute criminal matters." *State v. Spradlin*, 12 S.W.3d 432, 436 (Tenn. 2000). They "prosecute . . . all violations of the state criminal statutes," Tenn. Code Ann. § 8-7-103(1), without "approv[al]," "participat[ion]," or "supervis[ion]" by the Attorney General, Tenn. Code Ann. § 8-6-303.

Plaintiffs say that "in a sense this skirmish is academic." Resp. Dkt. 73, at PageID# 1116. Yet they later point to the PTMA's criminal penalties in partial support of their merits argument. *Id.* at 1127. In any event, determining a party's standing is not merely an academic exercise; standing goes to a court's subject-matter jurisdiction, and it is a fundamental, threshold requirement. *Fox v. Saginaw Cnty., Mich.*, 67 F.4th 284, 292-94 (6th Cir. 2023). Plaintiffs' suggestion that the Attorney General could bring a criminal prosecution under the PTMA does not establish standing.

### II. Plaintiffs Fail to State a First Amendment Claim.

As an initial matter, Plaintiffs insist that they have alleged both a facial *and* an as-applied First Amendment claim. Resp., Dkt. 73, PageID# 1120. They haven't. Count 1 of the Amended Complaint—the only count asserting a First Amendment violation—alleges only a facial claim. Plaintiffs say that their complaint is "replete with allegations unique to the litigants themselves," and that the PTMA "could be unconstitutional only as-applied to Plaintiff DCT," or to Plaintiff JFF, or to Plaintiff PHE. *Id.* But nowhere in Count 1—and unlike another of Plaintiffs' claims—did Plaintiffs allege that the PTMA violated the First Amendment rights of Plaintiff DCT, or Plaintiff JFF, or Plaintiff PHE as applied to them. It alleged that the PTMA violates "Plaintiffs'

3

rights," and that "[a]ll Plaintiffs seek an injunction against the Attorney General." Am. Compl., Dkt. 70, Count 1, PageID# 1084-85; *see Doe v. Burlew*, 165 F.4th 525, 531 (6th Cir. 2026). *Cf.* Am. Compl., Dkt. 70, Count 3, PageID# 1085-86 (Plaintiffs' *Supremacy Clause claim* alleging that the PTMA "violates the rights of Plaintiff JFF" and that "Plaintiff PFF seeks an injunction").

On the merits, Plaintiffs argue that the PTMA does not warrant intermediate scrutiny under *Paxton* because its "harmful to minors" definition does not "abide" the obscenity standard in *Miller v. California.* Resp., Dkt. 73, PageID# 1121-23. This argument is a nonstarter. As Defendant has explained—and notwithstanding Plaintiffs' tortured parsing—the PTMA's definition is materially indistinguishable from the statute at issue in *Paxton* and the statute at issue in *Ginsberg v. New York*, 390 U.S. 629 (1968). Def.'s Mem., Dkt. 72, PageID# 1102-04. And *Paxton* relied on both *Miller* and *Ginsberg* when identifying the obscene content to which States may properly regulate minors' access. *See* 606 U.S. at 474. Furthermore, the Sixth Circuit has effectively rejected the very argument Plaintiffs make—holding that the definition of "harmful to minors" in Tenn. Code Ann. § 39-17-901(6) "as construed by the Tennessee Supreme Court (1) incorporates the Supreme Court's three-part obscenity test from *Miller v. California* and (2) modifies it to apply to minors." *Friends of George's, Inc.*, 108 F.4th at 436. The Sixth Circuit also noted—citing *Ginsberg*—that the Supreme Court has "blessed state adaptations of the obscenity test to apply to minors." *Id.*

Plaintiffs contend that even under intermediate scrutiny, they have sufficiently stated a First Amendment claim by alleging, "[o]n information and belief," that "the every-hour and seven-years-retention provisions" of the PTMA "reflect the State's forbidden motive not just to protect minors from harmful content online, but to stifle *adult* access to sexual content." Am. Compl., Dkt. 70, at PageID# 1079, ¶ 51. They argue that the State has not sufficiently shown that the PTMA would be less effective without "age-verified" sessions and retention of "historical

4

anonymized age-verification data." Resp., Dkt. 73, PageID# 1125.  This argument fails; indeed, it tends to conflate separate components of intermediate scrutiny.

First, and regardless of Plaintiffs' allegation of a "forbidden motive" behind the PTMA, *Paxton* makes clear that the PTMA advances important governmental interests unrelated to the suppression of free speech"—namely, Tennessee's interest in "protecting *children* from sexually explicit speech." *Paxton*, 606 U.S. at 473 (emphasis in original).  Historically, obscenity decisions recognized two interests supporting the laws: curbing the corruption of the public mind and protecting the manners of youth in particular.  *Id.*  Tennessee's interest in "shielding children from sexual content is important, even 'compelling.'" *Id.* at 496.  Plaintiffs' speculative allegation about ulterior motive, grounded only on their "belief" but not facts, does not detract from the compelling interest supporting the PTMA.

Second, Plaintiffs' alleged belief in a "forbidden motive"—along with their speculative allegations about the "expense" and "privacy risks" associated with "age-verified" sessions and retention of historical data—do not state a plausible claim for relief.  Again, intermediate scrutiny requires only that a statute be tailored so that the government interest "would be achieved less effectively absent" its requirements and that the statute "not burden substantially more speech than is necessary to further that interest." *Paxton*, 606 U.S. at 496.  The very authority on which Plaintiffs rely for the proposition that the State cannot satisfy intermediate scrutiny based on "mere speculation or conjecture," *Tyler v. Hillsdale Cnty. Sheriff's Dep't.*, 837 F.3d 678, 694 (6th Cir. 2016), also establishes that Tennessee "can rely on a wide range of sources, including legislative history, empirical evidence, case law, and even common sense" to satisfy its burden.

*Common sense* alone explains the need for time-limited verified sessions—it prevents adults from facilitating access to pornography just as an irresponsible adult might buy cigarettes

or alcohol for a minor and it prevents a child from accidentally stumbling upon a device displaying harmful content. *Common sense* also explains the need for data retention—without that data there is no way to ensure that a website is complying with the PTMA. Clearly, then, the State's interest in protecting children from sexually explicit speech "would be achieved less effectively absent" the session and data-retention requirements. *Paxton*, 606 U.S. at 496. And Plaintiffs' speculation that it "might be shown" that expense or privacy concerns would lead to a "significant drop-off" by websites and users, Resp., Dkt. 73, PageID# 1125, 1126, does nothing to show that these provisions of the PTMA "burden substantially more speech than is *necessary* to further that interest." *Paxton*, 606 U.S. at 496.

### III. Plaintiffs Fail to State a Vagueness Claim.

Plaintiffs' arguments against dismissal of their claim that the PTMA is unconstitutionally vague wholly ignore Defendant's primary point—that "neither parties nor courts can disregard the requisite inquiry into how a law works in all of its applications." Def.'s Mem., Dkt. 72, PageID# 1109 (quoting *Moody v. NetChoice, LLC*, 603 U.S. 707, 744 (2024)). Again, Plaintiffs' facial vagueness claim fails for this reason alone. Courts will not hold that a law is unconstitutionally vague on its face "if it is clear what the [law] as a whole prohibits" or if the law "is surely valid [*i.e.* not vague] in the vast majority of its intended applications." *See, e.g., Woodlands Pride v. Paxton*, __F.4th__, 2026 WL 523811, at *9 (5th Cir. Feb. 25, 2026) (quoting *Hill v. Colorado*, 530 U.S. 703, 733(2000)) (internal quotations omitted). Plaintiffs have not addressed how the PTMA works in all of its applications nor shown that the PTMA would not be valid in the vast majority of its applications.

Plaintiffs do maintain that because the PTMA includes criminal penalties it calls for "relatively strict test"—yet they also dismiss Supreme Court precedent supporting the proposition

that a criminal statute's scienter requirement alleviates any vagueness concern. Response, Dkt. 73 at PageID ## 1127, 1129-30. Plaintiffs cannot have it both ways. And despite Plaintiffs' insistence that they've been provided with "no answers" to their professed confusion about several terms in the PTMA, Resp., Dkt. 73, PageID# 1127, none of those terms—for the reasons Defendant has provided—"fails[s] to give ordinary people fair notice of the criminalized conduct," Def.'s Mem., Dkt. 72, PageID# 1109 (quoting *United States v. Parrish*, 942 F.3d 289, 295 (6th Cir. 2019)); *see id.* at PageID## 1110-1111.

## CONCLUSION

This Court should dismiss Plaintiffs' Complaint.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

*/s/ Zachary L. Barker*
ZACHARY L. BARKER, BPR # 035933
Senior Assistant Attorney General

ANDREW D. DENNING, BPR #042208
Assistant Attorney General

Office of the Tennessee Attorney General
Constitutional Defense Division
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-8726
Zachary.Barker@ag.tn.gov
Andrew.Denning@ag.tn.gov

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I certify that the foregoing Motion was filed electronically on March 12, 2026. A true and correct copy of that filing was forwarded on the same day via the Court's CM/ECF system upon the following:

D. Gill Sperlein
THE LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, CA 94102
gill@sperleinlaw.om

Gary E. Veazey
JOHNSON GRUSIN KEE & SURPRISE
780 Ridge Lake Boulevard, Ste. 202
Memphis, TN 38119
gveazey@jglawfirm.com

James M. Allen
ALLEN LAW FIRM PLLC
780 Ridge Lake Boulevard, Ste. 202
Memphis, TN 38120-9426
jim@jmallenlaw.com

Edward M. Bearman
780 Ridge Lake Boulevard, Ste. 202
Memphis, TN 38120
ebearman@jglawfirm.com

*/s/ Zachary L. Barker*
ZACHARY L. BARKER
Senior Assistant Attorney General